**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                         CASE NO. 3:15-cr-167-J-32MCR

TODD MARTIN DORSETT

## O R D E R

Before the Court is Defendant's Motion to Suppress Evidence and Statements (Doc. 27), which seeks suppression of evidence he contends was obtained through an illegal search based on an invalid warrant. The assigned United States Magistrate Judge held an evidentiary hearing and thereafter issued a Report and Recommendation (Doc. 47) recommending that Defendant's motion to suppress be granted. The United States filed Objections to the Report and Recommendation (Doc. 51), to which Defendant responded (Doc. 52). The undersigned held a non-evidentiary hearing on the Objections on August 26, 2016 (Doc. 57), following which the parties submitted additional briefing at the Court's direction (Docs. 58, 61).

The parties do not object to the Magistrate Judge's factual findings,[1] and the Court finds they are due to be accepted and adopted in full. In pertinent part, the Magistrate Judge found that law enforcement received a tip that Defendant was growing marijuana on the property; performed a records check and learned that Defendant had a prior arrest for growing marijuana at the same property in 2011; obtained permission from a neighboring landowner to enter his property and from that vantage point observed indicia

---

[1] The Government does not object to the factual findings except to the extent they may be construed as legal conclusions. Defendant has no objections.

of a marijuana grow operation, including three greenhouses in various stages of completion, two large propane tanks near the greenhouses, large exhaust fans, and a "makeshift cooling system" attached to the greenhouse; with favorable sunlight, the detectives were able to observe through the semi-opaque covering the "silhouettes, shape, or outline of green plants located within the covered greenhouse"; and, based on the detectives' training and experience, they believed the plants were consistent with marijuana. (Doc. 47 at 2-6, 12.) The detectives were only able to positively identify the plants as marijuana by looking through binoculars. (Id. at 7.) Upon considering all the evidence, the Magistrate Judge concluded that detectives' use of binoculars to view the contents of the greenhouse violated the Fourth Amendment and, because the Affidavit for Search Warrant included the positive identification of the plants as part of the factual basis for probable cause, recommended that the evidence obtained during the execution of the warrant be suppressed.

The Government's objections to the legal conclusions of the Report and Recommendation are threefold: (1) the Magistrate Judge erred in concluding that the use of binoculars violated the Fourth Amendment; (2) "the Magistrate Judge erred by failing to independently conclude—even without a government request to do so—that the search warrant would have been supported by probable cause" even if the facts gained from the use of binoculars were excised from the warrant application (Doc. 51 at 2); and (3) the Magistrate Judge erred by recommending suppression because suppression is not the appropriate remedy even if there was a Fourth Amendment violation.

After conducting a careful and complete review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations," but must "make a de novo

2

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). It "may also receive further evidence[.]" Id. For purposes of this Order, the Court will not reach the question of whether law enforcement's use of binoculars violated the Fourth Amendment, as found by the Magistrate Judge. For a different reason, the evidence need not be suppressed.

Once the Magistrate Judge found that the detectives' use of binoculars violated the Fourth Amendment, the inquiry then became whether there was sufficient probable cause absent the information obtained with binoculars. See, e.g., United States v. Free, 254 F. App'x 765, 768 (11th Cir. 2007) ("When some of the evidence in an affidavit is found to have violated the Fourth Amendment, 'if sufficient untainted evidence was present in the affidavit to establish probable cause, the warrant was valid.'" (quoting United States v. Whaley, 779 F.2d 585, 589 n.7 (11th Cir. 1986)). The Magistrate Judge noted that "there may be an argument that the detectives presented sufficient probable cause regardless of the confirmation of marijuana plants," but did not substantively address this issue because the Government conceded this point during the hearing before the Magistrate Judge. (Doc. 47 at 15.) In its Objections, the Government states that it "now believes that conceding this point was a mistake" (Doc. 51 at 17), and specifically objects to the Magistrate Judge's failure to address this issue. As part of its obligation to conduct de novo review of the portions of the Report and Recommendation to which the Government objects, the Court may consider arguments not raised before the Magistrate Judge. United States v. Franklin, 694 F.3d 1, 6 (11th Cir. 2012) ("A district court does not abuse its discretion by accepting an argument not raised before the magistrate judge." (citing Stephens v. Tolbert, 471 F.3d 1173, 1176-77 (11th Cir. 2006)).

3

Defendant argues that "the Government cannot now take back its waiver simply because it realized it should not have conceded the issue[,]" and cites three cases in support of this argument. (Doc. 52 at 9.) None of the cases addresses this issue in the context of the district court's review of a magistrate judge's report and recommendation, which is governed by a different standard than appellate review. See 28 U.S.C. § 636(b). Moreover, the Eleventh Circuit has expressly held that a district court is not bound by a party's concession before a magistrate judge. See Eley v. Heckler, 734 F.2d 724, 725-26 (11th Cir. 1984) (per curiam) ("The district judge, considering the issue *de novo*, decided the Secretary was not bound by the [AUSA's] concession before the magistrate. Contrary to claimant's argument, this was not error. The magistrate only makes recommendations. Final decision is made by the district court.") (citing 28 U.S.C. § 636(b)(1) (1983)). Accordingly, the Court has considered whether the Affidavit for Search Warrant presented sufficient probable cause even without the confirmation of the plants with the binoculars, and concludes that it did.

Probable cause exists when, considering the totality of the circumstances in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A "fair probability" means that "the facts and circumstances would lead a reasonably prudent person to believe that the place to be searched contains contraband or evidence of a crime." United States v. Lopez, 649 F.3d 1222, 1245 (11th Cir. 2011). With the information obtained through the use of binoculars excised (represented below by the use of strike-through font), the Affidavit for Search Warrant sets forth the following facts:

> On September 23, 2015 Your Affiant spoke with a law enforcement
> officer in Suwannee County in reference to Todd Dorsett. This officer

4

told me that he has received Information that led him to believe that Todd Dorsett is possibly growing marijuana at his residence located at 1357 SW Wilson Springs Road in Fort White Florida.

Your Affiant is aware that Todd Dorsett was previously arrested for growing marijuana at this residence in November of 2011.

On September 23, 2015 Detectives Conger and Mccardle gained permission from a property owner, who's property adjoins Todd Dorsett's, to access their property. Detectives Mccardle and Conger was able to see two large metal framed buildings on Todd Dorsett's property. One building looked to be under construction. The other one was covered with clear plastic. They could see exhaust fans and a porta cool unit attached to this structure. They could also see two large propane cylinders on the property. All of this is Indicative of a marijuana grow operation. Detective Mccardle advised that he could see green plants growing inside of this shelter. ~~Detective Mccardle advised that he was able to positively identify these plants as marijuana plants. These plants were observed using the open field doctrine~~.

Detective Mccardle is very familiar with marijuana plants. He has worked several marijuana grows and he has seen hundreds, if not thousands, of growing marijuana plants. Detective Mccardle relayed the information from his surveillance to your affiant via the fellow officer rule.

Your Affiant knows from training and experience that marijuana growers commonly keep their finished crop Inside of their home for storage.

Your Affiant knows from training and experience that marijuana growers commonly keep a log of when to plant and harvest their plants

5

> written, down or on a computer. They will also keep times of when to allow the plants to have light and water Inside of their home.
>
> Your Affiant knows from training and experience that marijuana growers often keep chemicals used for growing marijuana inside of their home.

(Doc. 36-1 at 3-4 (alteration added).) This information can essentially be grouped into three categories: 1) the anonymous tip; 2) Defendant's prior arrest for growing marijuana; and 3) the detectives' observations and experience.

An anonymous tip, coupled with independent corroboration, can support a finding of probable cause. Gates, 462 U.S. at 246. Here, after receiving the tip, the detectives performed a records check and learned that Defendant had a prior arrest for growing marijuana at the same residence in 2011, which is certainly relevant to the probable cause determination. United States v. Leach, 498 F. App'x 915, 917 (11th Cir. 2012) (agents' conclusions that store was a "growth store" and equipment purchased by defendant was commonly used to grow marijuana, and agents' implication that high utility usage was indicative of a marijuana grow operation, "along with the fact of Leach's prior conviction [for growing marijuana], which was clearly relevant," were sufficient to support probable cause); United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (the issuing magistrate "could reasonably have concluded" that the DEA's information about defendant's prior drug-smuggling activities corroborated the informant's veracity); United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (rejecting defendant's contention that law enforcement did not adequately follow up on an informant's tip, stating "[o]n the contrary, [the officer] promptly set out to corroborate the informant's tip by consulting official records relating to appellant's prior convictions for marijuana trafficking," which revealed that five years prior,

6

she admitted to intentionally cultivating marijuana on the same property; noting that "[a]n affiant's knowledge of the target's prior criminal activity or record clearly is material to the probable cause determination."); United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002) (stating, while discussing "explicit corroboration" of informant's tip of possible illegal activity, "[c]ritically, [the agent's] affidavit stated that Bynum was a convicted felon with a criminal record in Virginia, who resided at the proposed search site, a site where officers had seized a large amount of heroin and United States currency less than four months earlier[,]" and "[a]n officer's report in his affidavit of the target's prior criminal activity or record is clearly material to the probable cause determination." (quotation marks omitted)); United States v. Sumpter, 669 F.2d 1215, 1222 (8th Cir. 1982) (stating "it is clear that an individual's prior criminal activities and record have a bearing on the probable cause determination.").[2]

To further corroborate the anonymous tip, the detectives conducted surveillance of Defendant's property from a neighboring property. The Affidavit details the detectives' observations, including equipment such as exhaust fans, cooling units, and propane, and the affiant states that "[a]ll of this is indicative of a marijuana grow operation." (Doc. 36-1 at 3.) It further states that "Detective McCardle is very familiar with marijuana plants," has "worked several marijuana grows and he has seen hundreds, if not thousands, of growing marijuana plants." Id. The detectives' conclusion that what they observed suggested a marijuana grow operation is also relevant in determining whether there is probable cause

---

[2] Although some of these cited cases involved reliance on a defendant's prior relevant criminal convictions in support of probable cause, rather than mere past criminal activity, the Court believes the underlying principles also apply where, as here, the issuing judge was told that Defendant had a prior arrest or charge stemming from the same type of criminal activity at the same residence in the relatively recent past.

for a warrant. Leach, 498 F. App'x at 917 ("Opinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation.") (citing United States v. Robinson, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995)).[3]

---

[3] The detectives testified as to their observations that were included in the Affidavit during the hearing before the Magistrate Judge. Detective Conger testified as follows regarding what he observed without the use of binoculars:

> [Det. Conger]: . . . Detective McCardle and I crawled up to the fence line, and at that point we could see the greenhouses.
>
> I observed what appeared to be a make-shift porticool system on one end of the greenhouse, fans on the other.
>
> And Detective McCardle pointed out to me that he saw tall plants. He could see the outlines of them and he could see where they were pressed up against the plastic on the greenhouse.
>
> [AUSA]: All right. At that point from the – from the way the plants looked and just the color of the plants, did they – were they consistent with – and I'm not saying you could at that point identify them as marijuana plants, but were they consistent with what a marijuana plant would look like?
>
> [Det. Conger]: Yes.
>
> [AUSA]: All right. So okay, go ahead.
>
> [Det. Conger]: As you said or as you asked, they did appear to be consistent with, but we could not particularly identify them as such.

(Doc. 40 at 13:15-14:7.) The Magistrate Judge later clarified precisely what Detective Conger was able to observe prior to looking through the binoculars:

> THE COURT: . . . What did you observe without binoculars, from your vantage point?
>
> [Det. Conger]: I observed two greenhouses under construction, the one that was completed, the propane tanks, the cooling fans and the cooling systems. I could also see a vent coming out of the – of one end of the completed greenhouse.
>
> THE COURT: Okay. And I believe you also testified you observed plants, but you couldn't identify what they were?
>
> [Det. Conger]: Yes, sir, not without binoculars.
>
> THE COURT: All right. Go ahead, counsel.

8

> [AUSA] And was all of that consistent with your training and experience, consistent with what looked like a marijuana growing operation?
>
> [Det. Conger]: Yes, sir.

(Id. at 22:14-23:4.) Detective McCardle also testified as to his observations without using binoculars:

> [Det. McCardle]: . . . And from that location [on the neighboring property] is where I could see the actual completed grow house, and I could see the silhouettes of – or outline, shape, or whatever you want to call it, of plants, tall plants inside. . . .
>
> [AUSA]: All right. And before you looked through the binoculars, you mentioned the coloring. Was the coloring consistent – given your past training, consistent with what a marijuana plant, the color of a marijuana plant would show?
>
> . . .
>
> Was the color, though, consistent with your training of what marijuana plants would be?
>
> [Det. McCardle]: Yes, sir.
>
> . . .
>
> [AUSA]: And without looking through the binoculars, did you see the two propane tanks [visible in Government's Exhibits 3 and 4]?
>
> [Det. McCardle]: Yes, sir.
>
> [AUSA]: Did you see exhaust fans as they're shown in those pictures?
>
> [Det. McCardle]: Yes, sir.
>
> [AUSA]: And did you see . . . a cooling apparatus?
>
> [Det. McCardle]: Yes, sir. It was located on – I guess you would call it the backside or the opposite end of the entrance to the completed grow room.
>
> [AUSA]: All right. And were – was that type of equipment, was that consistent, given your training and experience, consistent with what would be used for a marijuana growing operation?
>
> [Det. McCardle]: Yes, sir.

(Doc. 41 at 7:24-9:17.)

9

Based on the totality of these facts, there was sufficient probable cause to support the issuance of a search warrant because there was more than a fair probability that contraband or evidence of a crime–namely, a marijuana grow operation–would be found at Defendant's property. See, e.g., United States v. Broadhurst, 805 F.2d 849, 850 (9th Cir. 1986) (probable cause established where citizen informant and anonymous tipster both told police they observed greenhouse and gardens containing marijuana; citizen informant showed police the greenhouse; and during two aerial flyovers, officers observed through sides of greenhouse "shadows, shapes of plants, and shades of green" plants "of a color and height consistent with marijuana"); Blalock v. State, 483 N.E.2d 439, 440-41, 443 (Ind. 1985) (informant's tip, security precautions around the property, and officers' aerial observations through the translucent roof of plants that they opined were marijuana constituted sufficient probable cause to issue search warrant); United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012) (after subtracting information gained during officers' illegal entry, affidavit stating that law enforcement received an anonymous tip that the property was being used to grow marijuana, that officers had already discovered a marijuana grow operation at a different property mentioned in the anonymous tip, and that an officer smelled a strong odor of marijuana from the outbuildings of the property, supplied sufficient probable cause for warrant); United States v. Johnson, No. 6:11-cr-34-Orl-PCF-GJK, 2011 WL 1691831, at *5 (M.D. Fla. May 3, 2011) (concluding that, even if some of agent's observations were derived from warrantless search of premises, warrant was still supported by sufficient probable cause by stating that an agent smelled fresh marijuana at the property, agents previously observed large continuously running air conditioning units

on the structure, and contained information relating to an anonymous tip that the defendant was growing marijuana at his home); United States v. Neth, No. 6:09-cr-210-Orl-19GJK, 2010 WL 1257695, at *8 (M.D. Fla. Mar. 30, 2010) (concluding that affidavit provided a "substantial basis" for probable cause by stating that officers received an anonymous tip that defendant was involved in cultivating and trafficking cannabis, defendant lived at the residence in question, agent observed equipment that he knew based on his training and experience was used to cultivate cannabis, and agents detected odor of fresh cannabis).[4]

Because the warrant was supported by probable cause even without the positive identification of the plants through the use of binoculars, law enforcement was entitled to rely on it, the subsequent search pursuant to the warrant was valid, and the evidence obtained as a result need not be suppressed.[5] See Whaley, 779 F.2d at 589 n.7 ("Unquestionably, if sufficient untainted evidence was present in the affidavit to establish probable cause, the warrant was valid."). Defendant's arguments to the contrary are unavailing.

Defendant argues that the facts found by the Magistrate Judge do not support an independent determination by the Court that probable cause existed because the particulars of the anonymous tip that led to the investigation of Defendant were not testified to during the hearing, and the detectives' observations were just as consistent with lawful

---

[4] Although some of these cases cite the odor of marijuana as a factor in finding probable cause, the Court believes that if the officers had instead observed what they thought was marijuana, when viewed in totality with the other facts, the result would be the same.

[5] Although the Court has decided the motion to suppress on a legal basis different from that advanced by the Magistrate Judge, the Court need not conduct an evidentiary hearing because it has adopted in full the Magistrate Judge's factual findings and credibility determinations. Franklin, 694 F.3d at 6 n.2.

activity as they are with a marijuana grow operation. (Doc. 52 at 9-10.) When relying in part on a tip to show probable cause, a warrant affidavit must ordinarily demonstrate: (1) a connection between the defendant and the location to be searched; (2) a link between the location and criminal activity; and (3) the informant's veracity and knowledge. United States v. Davis, 313 F.3d 1300, 1303 (11th Cir. 2002). However, "there is no need to establish the informant's veracity if law enforcement officials have sufficient, independent corroboration of the information," which they did here. Id.

Furthermore, assuming arguendo that detectives' observations were as consistent with lawful activity as with a marijuana grow operation, that, in and of itself, does not defeat probable cause. See Wayne R. LaFave, Search & Seizure § 3.2(e) (5th ed. Oct. 2016 Update) ("The mere fact that innocent explanations for the activity may be imagined is not enough to defeat the probable cause showing, and there is probable cause if a succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one." (footnotes and quotation marks omitted)); see also id. n.232, n.233 (citing state and federal cases holding that all innocent explanations need not be negated in order to find probable cause, and that several otherwise innocent events may support probable cause when viewed in totality).

Finally, Defendant argues that the description of the plastic covering as "clear" was misleading. Even replacing the word "clear" with "semi-opaque," the Affidavit still contains sufficient information to establish probable cause. See Blalock, 483 N.E.2d at 444-45 (rejecting the defendant's argument that affiant's description of the roof covering as "clear" misled the court because it was actually "opaque" and "semi-translucent", stating "we

12

cannot conclude there was any purposeful deception in the affidavits, nor that the actual composition of the roof was much different than that generally described."). Because the term "clear" is thus immaterial to the probable cause determination, its inclusion is insufficient to invalidate the warrant. United States v. Sailor, 355 F. App'x 359, 364 (11th Cir. 2009) ("[O]missions and misrepresentations that are negligent or immaterial to the probable cause determination will not invalidate a search warrant.").

In sum, probable cause requires only a fair probability that evidence of a crime will be found at a particular place, not certainty that it will. Id. (citing United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2008)). When viewed in totality and applying a "flexible, common-sense standard" of probable cause, the factual basis of the Affidavit submitted to the issuing judge—even without the confirmation of the plants as marijuana—provided sufficient probable cause for a warrant to issue. Gates, 462 U.S. at 239; Florida v. Harris, 133 S.Ct. 1050, 1053 (2013).

As with many Fourth Amendment cases, this case presents its challenges. Certainly, the Magistrate Judge cannot be faulted for not ruling in the Government's favor on an issue the Government conceded. The undersigned is reluctant to allow the Government to avoid that concession but has the obligation to look at the record de novo now that the Government has asserted the issue. My judgment is that, under the accepted standard for probable cause, the Affidavit was sufficient even without the added "positive identification" made using binoculars. Therefore, as the evidence Defendant seeks to suppress was obtained pursuant to a valid search warrant supported by probable cause, there is no basis to suppress it.

Accordingly, it is hereby

**ORDERED:**

1. The United States' Objections to Report and Recommendation (Doc. 51) are **SUSTAINED in part**.

2. The Report and Recommendation of the Magistrate Judge (Doc. 47) is **ACCEPTED** and **ADOPTED in part**. The Report and Recommendation is adopted in full as to the Magistrate Judge's factual findings and credibility determinations, and in part as to the legal issues it addresses, as set forth in and modified by this Order.

3. Defendant's Motion to Suppress Evidence and Statements (Doc. 27) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of December, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

ab
Copies:

Honorable Monte C. Richardson
United States Magistrate Judge

Arnold B. Corsmeier, AUSA
Waffa Hanania, Esquire
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant